IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03427-M-RJ

| | |
|---|---|
| GERALD TIMMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| CHRISTOPHER SLAYDON, et al., | ) |
| | ) |
| Defendants. | ) |

On November 23, 2022, Gerald Timms, a/k/a Gerald Wayne Timms ("plaintiff"), presently housed at F.C.I. Butner ("Butner"), filed a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), Compl. [D.E. 1], together with a motion to proceed without prepayment of fees, Mot. [D.E. 2].

On December 1, 2022, the court granted the motion to proceed without prepayment of fees. See Order [D.E. 7].

On December 9, 2022, plaintiff filed a self-styled "second motion to proceed *in forma pauperis*." Mot. [D.E. 8].

On December 22, 2022, plaintiff moved to amend his complaint. Mot. [D.E. 9].

On December 29, 2022, plaintiff filed what the court construes as a motion for reconsideration of the December 1, 2022, order granting his motion to proceed without prepayment of fees. See Mot. [D.E. 10] (arguing that, because he is civilly committed, the court incorrectly applied the requirements of the Prison Litigation Reform Act ("PLRA") as to collection of fees); see also United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting courts "classify *pro se* pleadings from prisoners according to their contents, without regard to their captions.").

Plaintiff is committed to the custody of the United States Attorney General as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 4248. See Mot. [D.E. 2-1] at 1; see also United States v. Timms, 537 F. App'x 265, 266 (4th Cir. 2013). Thus, plaintiff is not subject to the PLRA's restrictions, to include the mandatory filing fee. See 42 U.S.C. § 1997e(h); Banks v. Hornak, 698 F. App'x 731, 735 (4th Cir. 2017) (unpublished); Hicks v. James, 255 F. App'x 744, 747–48 (4th Cir. 2007) (per curiam) (unpublished); Perkins v. Beeler, 207 F. App'x 262, 263 (4th Cir. 2006) (per curiam) (unpublished). Accordingly, the court GRANTS the motion for reconsideration [D.E. 10] to the extent he seeks a refund of fees collected.

Next, the court summarily grants the motion to amend [D.E. 9]. Fed. R. Civ. P. 15(a)(1).

The court now conducts its initial review of the amended complaint under 28 U.S.C. § 1915 and, for the reasons discussed below, dismisses the action.

## Legal Standard:

When reviewing applications for leave to proceed in forma pauperis, the court "shall dismiss" any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal

2

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–84 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

In Bivens, the Supreme Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Iqbal, 556 U.S. at 675 (citation omitted); see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001) ("The purpose of Bivens is to deter individual federal officers from committing constitutional violations."). To state a cognizable Bivens claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978).

Discussion:

Plaintiff names as defendants Butner employees S.I.S. Technician Christopher Slaydon ("Slaydon"), Social Worker Brandi Kohr ("Kohr"), Counselor Andre Taylor ("Taylor"), and Clinical Coordinator Dr. Patrick Cook ("Cook"). Compl. [D.E. 1] at 2–3. Plaintiff generally alleges that, despite being civilly detained, he was punished in the manner of prisoners. Id. at 3.

As to Slaydon, plaintiff alleges that: Slaydon was "responsible for investigating rule violations and pursuing prosecutions"; Slaydon twice made referrals to the U.S. Attorney's Office for the prosecution of plaintiff; on February 23, 2015, an inmate in the SHU alleged plaintiff had

3

a weapon and Slaydon ordered an officer to search plaintiff's cell; the search revealed a weapon; plaintiff was cited for a disciplinary infraction; plaintiff also was federally prosecuted in United States v. Timms, No. 5:15-cr-169-BO-1 (E.D.N.C.), resulting in his conviction and sentence for possession of contraband in prison. Id. at 4.

As to Kohr, plaintiff alleges that: on May 19, 2019, Kohr "ordered plaintiff to come to the multipurpose room to question him about involvement in a bartering situation with another inmate"; plaintiff denied involvement and Kohr and others searched his cell; as Kohr escorted plaintiff to the officer's station, Kohr stated, "I'll teach you to not cooperate with CIP staff [sic]," "meaning the search was specifically to retaliate against plaintiff for denying involvement in bartering"; the search revealed a "short blade"; plaintiff was cited for possession of a weapon; "the item was turned over to defendant Slaydon for investigation"; plaintiff was placed in the SHU; and Slaydon referred plaintiff for prosecution, resulting in his indictment. Id. at 5.

As to Taylor, plaintiff alleges that: on September 3, 2019, plaintiff reported to Taylor's office for cell assignment and was informed he would be in cell 143L; Taylor told plaintiff the cell would be searched by Taylor every day; plaintiff told Taylor "that would be harassment"; Taylor stated "you are a 'cho mo[,]' I can do whatever I want"; "shortly thereafter[,] plaintiff filed a sexual harassment complaint"; in September 2019, Taylor searched plaintiff's cell; "in retaliation for plaintiff's complaint against him," Taylor "allegedly found items that he alleged were weapons, and wrote an incident report for 104 possession of a weapon with an express intent to punish plaintiff"; plaintiff was federally prosecuted in United States v. Timms, No. 5:19-cr-00428-FL-1 (E.D.N.C.), and convicted of possession of contraband in prison; "upon return from court, plaintiff went before the discipline hearing officer, Mr. Steener, and the incident report Defendant Taylor

4

wrote . . . was reduced from the 104 – possession of a weapon to a 305 – contraband"; and "clearly Defendant Taylor issued the incident report in retaliation for the harassment complaint." Id. at 6.

As to Cook, plaintiff alleges that: on October 20, 2022, he was placed in the SHU due to a Prison Rape Elimination Act ("PREA") complaint that was deemed unsubstantiated; on October 21, 2022, Cook "overstepped his position by specifically going from one unit (Maryland) to the unit where Plaintiff was housed (North Carolina) and took it upon himself to inventory Plaintiff's property with a specific intent bypassing policy directing that the unit officer who operates the unit on his/her shift inventories a person's property"; Cook's search purportedly found writing implements that were modified to contain "metal instruments sharpened to a point"; "plaintiff was unaware of any form of instrument of this fashion being in his cell"; plaintiff's door was not secure and he did not witness anyone securing it; and Cook, "knowing plaintiff's history and knowing his actions were specifically designed and intended to find articles in which to issue incident reports, wrote the report with the express intent to punish plaintiff by writing a 105 possession of weapon to pursue criminal prosecution to violate plaintiff's due process rights [sic]." Id. at 7–8.

Plaintiff argues that, because he is a civil detainee under the Adam Walsh Act, defendants' use of prison rules "to justify their actions to further and seek criminal charges against plaintiff" were impermissibly designed to punish him. Id. at 9 (citing Youngberg v. Romeo, 457 U.S. 307 (1982), and Bell v. Wolfish, 441 U.S. 520 (1979)). Plaintiff contends both that his conditions of confinement were imposed with an express intent to punish him, and that defendants' actions were not "reasonably related to a legitimate nonpunitive governmental objective." Id. (citing, *inter alia*, Matherly v. Andrews, 859 F.3d 264, 275 (4th Cir. 2017). Thus, plaintiff reasons, defendants' impermissible retributions denied him due process. Id. at 10.

5

Case 5:22-ct-03427-M-RJ   Document 11   Filed 01/04/23   Page 5 of 13

For relief, plaintiff seeks a total of $40 million in punitive and compensatory damages for:

> mental anguish, stress, loss of liberty, fear for plaintiff's safety in other facilities as a known sex offender, being housed in county jails and regional jails as a civil commitment, being transported in punitive restraints the same as a convicted felon even as a civil detainee, and deliberate indifference to all of the above and more.

Id.

In his motion to amend, plaintiff adds as a defendant Dr. Trish Smithson ("Smithson"), a psychologist at Butner. Mot. [D.E. 9] at 1. Plaintiff alleges that, on December 8, 2022, Smithson wrote an incident report citing him for disruptive conduct and extortion for purportedly filing liens against Smithson and other staff members. Id. at 2. Plaintiff contends that there is no support for these charges. Id. Plaintiff argues that Smithson, "with purposeful intent, maliciousness, and in bad faith [,] utilized 'rules designated to punish.'" Id. at 3. Plaintiff reiterates his claim that defendants' actions are punitive and violate his due process rights. Id. at 4.

Plaintiff's claims fail for a variety of reasons. First, the Supreme Court upheld the Adam Walsh Act's constitutionality, see United States v. Comstock, 560 U.S. 126, 149 (2010), and the Fourth Circuit expressly upheld the due process standard for §4248 civil commitments, see United States v. Comstock, 627 F.3d 513, 524 (4th Cir. 2010), cert. denied, 564 U.S. 1030 (2011).

Next, several of plaintiff's claims are untimely. Bivens actions are subject to state statutes of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 279–80 (1985); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999). North Carolina has a three-year statute of limitations for personal injury actions. See N.C. Gen. Stat.§ 1-52(5). The time for a Bivens cause of action is determined under federal law and generally accrues when plaintiff either knows or has reason to know of the injury that is the basis of the action. See Reinbold, 187 F.3d at 359 n.10 (citations omitted); see also Williams v. Blue Cross Blue Shield of N. Carolina, 357 N.C. 170,

6

178, 581 S.E.2d 415, 423 (2003) (noting that the general rule is, "a cause of action accrues as soon as the right to institute and maintain a suit arises").

Here, because his claims against Slaydon, Kohr, and Taylor respectively arose circa February 23, 2015, May 19, 2019, and September 2019, and because plaintiff knew or should have known of his injuries on or about these dates of occurrence, the three-year statute of limitations on these claims ran before plaintiff commenced the instant action in November 2022.

Plaintiff also has not plausibly alleged facts that would allow for tolling of the statute of limitations. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (citation omitted)); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (finding equitable tolling inappropriate when "the claimant failed to exercise due diligence in preserving his legal rights"); Hardin v. Straub, 490 U.S. 536, 538–39 (1985) (noting § 1983 claims rely on state-law tolling provisions); Shook ex rel. Shook v. Gaston Cnty. Bd. of Educ., 882 F.2d 119, 121 (4th Cir. 1989) ("When a state statute [of limitations] is borrowed . . . the federal court will also borrow the state rules on tolling."); cf. Misenheimer v. Burris, 360 N.C. 620, 622, 637 S.E.2d 173, 175 (2006).

Accordingly, the court dismisses these untimely Bivens claims. See Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 956 (4th Cir. 1995) (en banc) (holding dismissal appropriate when a claim is time-barred on its face), cert. denied, 516 U.S. 1177 (1996).

Next, to the extent plaintiff alleges Cook's October 21, 2022, search of his cell was constitutionally unreasonable, he fails to state a viable Bivens claim. See Block v. Rutherford, 468 U.S. 576, 589–91 (1984) (generally deferring to prison security interests allowing

7

"shakedown" searches of a cell and noting that such searches do not violate due process rights); Hudson v. Palmer, 468 U.S. 517, 527–28 (1984) (holding prisoners have no reasonable expectation of privacy in their cells).

Next, the court turns to plaintiff's claims of retaliation. To survive initial review of a First Amendment retaliation claim, plaintiff must plausibly allege: "(1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant[s'] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quotation and alterations omitted), cert. denied, 138 S. Ct. 738 (2018); see Booker v. S.C. Dep't of Corr., 855 F.3d 533, 544 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018).

As to retaliation claims, generally, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right," and also must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75. Prisoner retaliation claims generally are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quotation omitted).

Here, defendants' purported actions–searching his cell, confiscating contraband, and referring him for disciplinary proceedings or criminal prosecution–do not violate plaintiff's constitutional rights, and plaintiff's bald, conclusory claims of retaliation constitute mere "labels and conclusions" that are insufficient to plausibly allege the requisite causal relationship. Cf. Martin, 858 F.3d at 249; Booker, 855 F.3d at 541; see Iqbal, 556 U.S. at 678 ("Threadbare recitals

8

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); Cochran, 73 F.3d at 1317; Adams, 40 F.3d at 74–75.

To the extent plaintiff challenges his conditions of confinement, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires a showing that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) (defining deliberate indifference).

Plaintiff's conditions-of-confinement claims, as alleged, are insufficiently serious to satisfy the inquiry's objective prong. See De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (noting only "extreme deprivations"–*i.e.*, a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof–satisfy a conditions-of-confinement claim's objective component). Further, plaintiff's bald assertions alleging defendants' "deliberate indifference" again are mere "labels and conclusions" insufficient to state a cognizable Eighth Amendment claim. Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678.

Plaintiff's bald, threadbare claims concerning his placement in the SHU or other administrative punishments likewise fail. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Youngberg, 457 U.S. at 321–22; Bell, 441 U.S. at 546–47; Gaston v. Taylor, 946 F.2d 340, 343

9

(4th Cir. 1991) (noting that changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively."); see also Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003) (finding that "placement in a prison, subject to the institution's usual rules of conduct" is not by itself a punishment of a civil detainee); Ballard v. Johns, 17 F. Supp. 3d 511, 518 (E.D.N.C. 2014) ("[P]lacement of civil detainees in a prison, subject to the institution's usual rules of conduct does not in and of itself equate to punishment of civil detainees and civil detainees are subject to the same security policies as those used at correctional facilities."), aff'd, 579 F. App'x 214 (4th Cir. 2014) (per curiam) (unpublished).

Alternatively, even if plaintiff's claims against defendants actually were cognizable under Bivens, the court still would decline to recognize an implied Bivens cause of action in this case.

In Ziglar v. Abbasi, 137 S. Ct. 1843 (2017) ("Abbasi"), the Supreme Court noted that it had recognized Bivens causes of action in only three instances–an unreasonable seizure claim against federal officers under the Fourth Amendment in Bivens, a federal employment gender discrimination claim against a U.S. Congressman under the equal protection component of the Fifth Amendment's Due Process Clause in Davis v. Passman, 442 U.S. 228 (1979) ("Davis"), and a deliberate indifference claim on behalf of a decedent inmate against federal prison officials under the Eighth Amendment's Cruel and Unusual Punishments Clause in Carlson v. Green, 446 U.S. 14 (1980) ("Carlson"). See Abbasi, 137 S. Ct. at 1855.

The Court noted, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." Id. at 1855–56 (citations omitted). To

10

recognize implied causes of action under Bivens, a court must discern whether it has authority "to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Id. at 1856. The Court opined that expanding the Bivens remedy is now a "disfavored judicial activity," id. (quotation omitted), and "separation-of-powers principles are or should be central to the analysis" when a party seeks an implied cause of action, id. at 1857.

If a claim "presents a new Bivens context," id. at 1859, a court must assess whether any "special factors counsel[ ] hesitation" in recognizing a remedy "in the absence of affirmative action by Congress." Id. at 1857; see Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) (reaffirming the Abbasi two-step analysis); but see Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022) (acknowledging, although Abbasi "describe[s] two steps," the steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and suggesting a "rational reason" to defer to Congress will be present "in most every case.").

A Bivens claim is "new" if the case differs "in a meaningful way from previous Bivens cases decided by" the Court. Abbasi, 137 S. Ct. at 1859. Such meaningful differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1860.

Plaintiff's claims present a new context that is meaningfully different from the causes of action the Supreme Court previously recognized in Bivens, Davis, or Carlson. Plaintiff's alleged injuries–being placed in the SHU despite his civil detainee status, having his cell searched, being cited for violations of prison rules, and being criminally charged for possession of contraband–are

11

vastly different from those in Carlson, 446 U.S. at 17 (finding a Bivens remedy available where federal prison officials failed to adequately treat a decedent's fatal asthma attack). Plaintiff also names a new type of defendant–Butner employees whom plaintiff alleges authorized searches of his cell, enforced prison rules, or filed purported retaliatorily incident reports against him–as opposed to prison officials failing to provide adequate medical treatment in Carlson, a Congressman making employment determinations in Davis, or arresting federal narcotics agents in Bivens. Also unlike Davis, plaintiff's allegations do not sound under the equal protection aspect of the Fifth Amendment's Due Process Clause. See Abbasi, 137 S. Ct. at 1855, 1860 (listing "the rank of the officers involved" and "the constitutional right at issue" as potential meaningful differences); Hernandez, 140 S. Ct. at 743 (noting that a Bivens claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); see also Tate v. Harmon, 54 F.4th 839, 846–47 (4th Cir. 2022) (discussing Carlson and finding that the plaintiff's conditions-of-confinement claims arose in a "new context"); Annappareddy v. Pascale, 996 F.3d 120, 132–34 (4th Cir. 2021).

After finding this case is "meaningfully different" from Bivens causes of action previously recognized by the Supreme Court, the court further finds that, because alternative remedies are available to plaintiff, including the BOP Administrative Remedy Program, there are "special factors" counseling hesitation before expanding the Bivens remedy. See Abbasi, 137 S. Ct. at 1857; Earle v. Shreves, 990 F.3d 774, 780 (4th Cir.) (noting that, although "alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and remain relevant" to the "special factor" analysis), cert. denied, 142 S. Ct. 358 (2021); see also Silva v. United States, 45 F.4th 1134, 1140 (10th Cir. 2022) (finding a BOP inmate's Eighth

12

Case 5:22-ct-03427-M-RJ   Document 11   Filed 01/04/23   Page 12 of 13

vastly different from those in Carlson, 446 U.S. at 17 (finding a Bivens remedy available where federal prison officials failed to adequately treat a decedent's fatal asthma attack). Plaintiff also names a new type of defendant–Butner employees whom plaintiff alleges authorized searches of his cell, enforced prison rules, or filed purported retaliatorily incident reports against him–as opposed to prison officials failing to provide adequate medical treatment in Carlson, a Congressman making employment determinations in Davis, or arresting federal narcotics agents in Bivens. Also unlike Davis, plaintiff's allegations do not sound under the equal protection aspect of the Fifth Amendment's Due Process Clause. See Abbasi, 137 S. Ct. at 1855, 1860 (listing "the rank of the officers involved" and "the constitutional right at issue" as potential meaningful differences); Hernandez, 140 S. Ct. at 743 (noting that a Bivens claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); see also Tate v. Harmon, 54 F.4th 839, 846–47 (4th Cir. 2022) (discussing Carlson and finding that the plaintiff's conditions-of-confinement claims arose in a "new context"); Annappareddy v. Pascale, 996 F.3d 120, 132–34 (4th Cir. 2021).

After finding this case is "meaningfully different" from Bivens causes of action previously recognized by the Supreme Court, the court further finds that, because alternative remedies are available to plaintiff, including the BOP Administrative Remedy Program, there are "special factors" counseling hesitation before expanding the Bivens remedy. See Abbasi, 137 S. Ct. at 1857; Earle v. Shreves, 990 F.3d 774, 780 (4th Cir.) (noting that, although "alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and remain relevant" to the "special factor" analysis), cert. denied, 142 S. Ct. 358 (2021); see also Silva v. United States, 45 F.4th 1134, 1140 (10th Cir. 2022) (finding a BOP inmate's Eighth

Amendment Bivens claim was foreclosed because, pursuant to Egbert, 142 S. Ct. at 1806–07, and Malesko, 534 U.S. at 71, 74, the BOP Administrative Remedy Program is a sufficient alternative remedial scheme to challenge allegedly unconstitutional actions within the BOP).

Finally, answering the Supreme Court's Bivens remedy expansion query – "whether there is any reason to think that Congress might be better equipped to create a damages remedy," Egbert, 142 S. Ct. at 1803 – where, as here, a civil detainee under the Adam Walsh Act alleges purportedly retaliatory cell searches and enforcement of prison rules, and is subjected to administrative punishment and criminal charges for conduct related to these rule violations, there indeed is a "rational reason" for the court to defer instead to Congress for creation of a damages remedy. See Tate, 54 F.4th at 847–48. Thus, the court declines to extend the Bivens remedy in this case. See Abbasi, 137 S. Ct. at 1860, 1864 (noting, extension of the Bivens remedy "is a decision for the Congress to make, not the courts" and "even a modest [Bivens] extension is still an extension").

### Conclusion:

For the reasons discussed above, the court: GRANTS the motion to proceed *in forma pauperis* [D.E. 8]; GRANTS the motion to amend [D.E. 9]; GRANTS IN PART the motion for reconsideration [D.E. 10]; DIRECTS the clerk to refund plaintiff any funds collected in this action; DISMISSES the complaint for failure to state a claim; and DIRECTS the clerk to close the case.

SO ORDERED, this 4th day of January 2023.

RICHARD E. MYERS II
Chief United States District Judge